Christopher R. Pitoun (SBN 290235)
*christopherp@hbsslaw.com*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

Steve W. Berman (*pro hac vice* forthcoming)
*steve@hbsslaw.com*
Jerrod C. Patterson (*pro hac vice* forthcoming)
*jerrodp@hbsslaw.com*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594

*Attorneys for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GOULD, KAUSHIK IYENGAR, and JOHN NIXON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HYUNDAI MOTOR COMPANY, HYUNDAI MOTOR AMERICA, KIA CORPORATION, KIA AMERICA, INC., GENESIS MOTOR, LLC, and GENESIS MOTOR AMERICA LLC,<br><br>Defendants. | Case No. 8:23-cv-1344<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

011183-11/2316622 V1

1

# TABLE OF CONTENTS

2
<u>**Page**</u>

3  I.     INTRODUCTION ................................................................. 1

4  II.    PARTIES ............................................................................ 5

5      A.  Plaintiffs ............................................................. 5

6          1.  New York Plaintiff ................................... 5

7          2.  Georgia Plaintiff ...................................... 6

8          3.  Florida Plaintiff ....................................... 7

9      B.  Defendants ......................................................... 8

10 III.   JURISDICTION AND VENUE ......................................... 11

11 IV.    FACTUAL ALLEGATIONS ............................................ 11

12     A.  The Class Vehicles are defective and do not charge as
           advertised. .......................................................... 11

13     B.  Defendants must have known about the Charging Defects
           prior to production. ........................................... 13

14         1.  Defendants knew about the Charging Defects based
               on their own monitoring of the industry. ................... 13

15         2.  Complaints on publicly available internet websites
               show that Defendants have known about the
               Charging Defects. ....................................... 14

16 V.     CLASS ACTION ALLEGATIONS ................................... 35

17     A.  Class Definitions .............................................. 35

18     B.  Class Action Requirements ............................. 36

19         1.  Numerosity under Federal Rule of Civil Procedure
               23(a)(1) ......................................................... 36

20         2.  Commonality and Predominance under Federal
               Rule of Civil Procedure 23(a)(2) and 23(b)(3) ............ 37

- i -

3.   Typicality under Federal Rule of Civil Procedure
23(a)(3) ................................................................ 38

4.   Adequacy of Representation under Federal Rule of
Civil Procedure 23(a)(3) ..................................... 38

5.   Superiority of Class Action under Federal Rule of
Civil Procedure 23(b)(3) ..................................... 38

VI.   CAUSES OF ACTION ................................................................ 39

A.   Claims brought on behalf of the Nationwide Class, or in
the alternative, on behalf of the Sub-Classes ................... 39

COUNT I VIOLATION OF THE COMPUTER FRAUD AND
ABUSE ACT (18 U.S.C. § 1030 *ET SEQ.*) ................................ 39

COUNT II VIOLATION OF THE CALIFORNIA COMPUTER
DATA ACCESS AND FRAUD ACT (CAL. PENAL CODE §
502, *ET SEQ.*).............................................................................. 43

COUNT III VIOLATIONS OF THE CALIFORNIA UNFAIR
COMPETITION LAW  (CAL. BUS. & PROF. CODE § 17200,
*ET SEQ.*)........................................................................................ 46

COUNT IV TRESPASS TO CHATTEL ................................................ 47

B.   Claims Brought on Behalf of the New York Class............... 49

COUNT I  VIOLATIONS OF NEW YORK GENERAL BUSINESS
LAW § 349 (N.Y. GEN. BUS. LAW § 349) .................................. 49

COUNT II  VIOLATIONS OF NEW YORK GENERAL BUSINESS
LAW § 350 (N.Y. GEN. BUS. LAW § 350) .................................. 52

COUNT III  UNJUST ENRICHMENT .................................................. 55

C.   Claims Brought on Behalf of the Georgia Class................... 55

COUNT I  VIOLATION OF GEORGIA'S FAIR BUSINESS
PRACTICES ACT (GA. CODE ANN. § 10-1-390 *ET SEQ.*) ..................... 55

COUNT II  VIOLATION OF THE GEORGIA UNIFORM
DECEPTIVE TRADE PRACTICES ACT (GA. CODE ANN.
§ 10-1-370 *ET SEQ.*)........................................................................ 59

- ii -

COUNT III  UNJUST ENRICHMENT ................................................................. 59

    D.    Claims Brought on Behalf of the Florida Class. ................................. 60

COUNT I  VIOLATIONS OF THE FLORIDA DECEPTIVE AND
    UNFAIR TRADE PRACTICES ACT ("FDUTPA"), (FLA.
    STAT. ANN. § 501.201, *ET SEQ.*) ................................................. 60

COUNT II  UNJUST ENRICHMENT ................................................................. 63

PRAYER FOR RELIEF ...................................................................................... 63

DEMAND FOR JURY TRIAL ........................................................................... 64

CLASS ACTION COMPLAINT

011183-11/2316622 V1

Plaintiffs David Gould, Kaushik Iyengar, and John Nixon (collectively, "Plaintiffs") bring this action, on behalf of themselves and all others similarly situated, against Defendants Hyundai Motor Company, Hyundai Motor America, Kia Corporation, Kia America, Inc., Genesis Motor, LLC, and Genesis Motor America LLC (the "Hyundai Defendants" or "Defendants"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information learned to date through investigations, except as to the allegations specifically pertaining to individual Plaintiffs, which are based on personal knowledge:

## I.    INTRODUCTION

1.    Consumers of electric vehicles ("EVs") place a premium on fast and reliable charging at home.  When consumers plug in their EVs in the evening, they reasonably expect their vehicles to be fully charged in the morning, so that they can drive to work, drop the kids off at school, and go about their daily routine.

2.    The Hyundai Defendants develop, manufacture, and sell a group of EVs (the "Class Vehicles"[1]) that are promoted as offering seven-hour charging at home with a Level 2 charger.  This marketing campaign is prominently displayed on the Hyundai website for the Ioniq 5 vehicles:[2]

---

[1] The Class Vehicles are defined as Hyundai Ioniq 5, Ioniq 6, Kia EV6, and Genesis GV60.  They all share a common electric platform.  *See* https://en.wikipedia.org/wiki/Hyundai_Electric_Global_Modular_Platform (last visited July 24, 2023).

[2] *See* https://www.hyundaiusa.com/us/en/vehicles/ioniq-5 (last visited July 24, 2023).

CLASS ACTION COMPLAINT
011183-11/2316622 V1

240V AC charging
Go from 10 to 100% in about 7 hours.

The standard 10.9kW on-board charger uses Level 2 charging to power-up your IONIQ 5 at home. ⓘ

3.     Similarly, the Kia website for the EV6 promises a charging time of five hours and 50 minutes at home with a Level 2 charger,[3] and the Genesis website promises a full charge in seven hours and 40 minutes.[4]

4.     These promises are false.  In reality, the chargers overheat before completing the charge, sometimes within 30 to 60 minutes of use.  Class Vehicle owners must unplug and replug the chargers in order to restart the charging process.  As a result, owners who plug in their vehicles at night come back in the morning to find that their vehicles are not fully charged.  And the overheated chargers frequently lead to damage to vehicle components (herein, "Defect 1").

5.     In response, Defendants have offered a software "fix" that doesn't solve the problem.  Through a software modification performed at the dealerships, Defendants intentionally lower the charging speed to avoid overheating, which leads to charging times of 10 hours or more.  This "fix" ("Defect 2") leaves the Class Vehicle owners with a different vehicle than they purchased, and it fails to live up to the promises Defendants made when they were marketing their vehicles.  And although Hyundai issued a Technical Service Bulletin ("TSB") to address the problem when the vehicle "intermittently stops charging before charging

---

[3] *See* https://www.kia.com/us/en/ev6/specs (last visited July 24, 2023).

[4] *See* https://www.genesis.com/worldwide/en/models/luxury-suv-genesis/ electrified-gv70/charging.html (last visited July 24, 2023).

CLASS ACTION COMPLAINT

completes,"[5] at no point does the TSB disclose that the software update doubles the charging time.

6.    Defects 1 and 2 (collectively, the "Charging Defects") have received a lot of attention online, exemplified by a YouTube video posted by a user identified as "The Ioniq Guy" who has over 15,000 followers.  In the video,[6] The Ioniq Guy tells his viewers that the Class Vehicles "have major issues charging at 48 amps, and sometimes even 40 amps, and sometimes, really badly, 32 amps, because that is a very low charge rate."  As he explains further, "what happens is you plug in, start charging at 48 amps, and within half an hour, an hour, or an hour and a half, depending on the outside ambient air temperature, the charging session completely fails and the car no longer charges.  So you could wake up the next morning with a completely empty battery while still having to figure out how you're going to get to work.  This issue has been going on for over a year[.]"  He states that the software patch (Defect 2) will "lower the charging rate down to about 23 amps," which is a "far cry from what this car is advertised as being able to do."

7.    In the video, The Ioniq Guy then plugs in his vehicle into a 48-amp charger and documents how during the charging session the AC inlet temperature reached 212 degrees within 38 minutes, and the charging session failed two minutes later.  After the test he says, "So, Hyundai, you need to figure this one out; this is clearly a design problem with the car and you can't advertise this car is charging at 48 amps anymore because it doesn't. . . . . [A]t the end of the day if it's not charging from 0 to 100 percent at 48 amps then that's a false statement in my eyes."

8.    Plaintiffs accordingly bring this action, on behalf of themselves and those similarly situated, to seek two specific types of relief.  *First*, Plaintiff Kaushik

---

[5]  *See* Hyundai TSB No. 23-EV-0003H (Mar. 2023), *available at* https://drive.google.com/file/d/1KNLMhfsDGM826SBPw9nS8ytmUwUYCUIE/view (last visited July 24, 2023).

[6]  https://youtu.be/uXi33MtrJAU (last visited July 24, 2023).

CLASS ACTION COMPLAINT
011183-11/2316622 V1

Iyengar seeks relief for the injuries and monetary damages he has sustained as a result of Defendants' unlawful interference with the performance of his vehicle through the software update. Based on this conduct, Plaintiff Iyengar asserts claims on behalf of a nationwide Class (or in the alternative on behalf of the State Sub-Classes) for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq. ("CFAA"), California's Computer Data Access and Fraud Act, Cal. Penal Code § 502, et seq. ("CDAFA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), and trespass to chattel under California law.

9. ***Second***, Plaintiffs Gould, Iyengar, and Nixon seek relief for overpayment for their vehicles at the point of sale based on Defendants' misrepresentations and material omissions regarding the Charging Defects. As reflected in the YouTube video, Defendants have made, and continue to make, false statements about the charging speed of the Class Vehicles, and at no point have they disclosed the Charging Defects to their customers prior to purchase. Plaintiffs accordingly bring claims under the consumer protection laws of the state of New York, Georgia, and Florida based on Defendants' fraudulent conduct.

10. Under both theories of liability, Plaintiffs seek recovery on behalf of the Class and Sub-Classes for all relief to which they are entitled, including but not limited to compensation for out-of-pocket and incidental expenses, including compensation for Class Vehicle owners who overpaid for vehicles with a significant defect, owners who incurred damage to their vehicles as a result of the overheating chargers, diminishment in value as a result of the software "fix", punitive damages, and an injunction compelling Defendants to repair their vehicles so that they will reliably charge within seven hours, as promised by Defendants.

- 4 -
CLASS ACTION COMPLAINT

## II.    PARTIES

**A.    Plaintiffs**

**1.    New York Plaintiff**

11.    Plaintiff David Gould is a resident of Glens Falls, New York.  On June 29, 2023, Plaintiff Gould purchased a new MY 2023 Ioniq 5 from Garvey Hyundai in Queensbury, New York for approximately $63,350.

12.    Since purchasing his vehicle, Plaintiff Gould has experienced problems with the charging system, including random stoppage of charging of his vehicle.  He has been required to unplug and replug the charger to restart the charging cycle.

13.    In the days and weeks preceding Plaintiff's purchase, and in contemplating his vehicle needs, Plaintiff saw and recalled Defendants' internet advertisements, sales brochures, and heard statements from Defendants' dealership sales representatives wherein Defendants claimed that the Class Vehicles charged within an approximate seven-hour window with a Level 2 charger.  Absent these representations, Plaintiff would not have purchased the vehicle, or would have paid less for it. Neither Defendants nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the Charging Defects. Had Defendants disclosed the Charging Defects, Plaintiff—through his research prior to purchase—would have received these disclosures, and either would have not purchased the Class Vehicle, or would have paid less for it. Accordingly, Plaintiff and each Class member suffered concrete economic injury as a direct and proximate result of Defendants' wrongful, deceptive conduct. As deemed appropriate, Plaintiff's and each other Class member's ascertainable losses include, but are not limited to, the full purchase price of the vehicle, out-of-pocket losses by overpaying for the vehicles at the time of purchase, decreased performance of the vehicles, diminished values of the vehicles, monetary loss in the form of increased energy costs, and benefit of the bargain damages. Defendants have unjustly enriched

CLASS ACTION COMPLAINT

1    themselves as a result, and Plaintiff is entitled to a pro rata share of Defendants'
2    disgorged profits.

3          **2.**      **Georgia Plaintiff**

4          14.     Plaintiff Kaushik Iyengar is a resident of Alpharetta, Georgia. He works
5    in the IT field. On or about October 11, 2022, from his residence, he purchased a
6    MY 2023 Ioniq 5 Limited from Atlantic Hyundai in Islip, New York for
7    approximately $66,000. He has a Level 2 charger capable of charging at 40 amps.

8          15.     When he originally purchased the vehicle in October 2022, he did not
9    have any problems with charging. To take advantage of Georgia's electricity rate
10   incentives (which charges only 1.6 cents per kilowatt hour for charging between
11   11:00 p.m. to 7:00 a.m.), Plaintiff Iyengar developed a pattern of setting his charging
12   time for 11:00 p.m., so that he could reliably have a fully charged vehicle in the
13   morning to take his daughter to school.

14         16.     But by January or February 2023, he began to experience complete
15   shutdowns, which required him to unplug and replug the charger. In March 2023, he
16   found the YouTube video summarized above, and he reviewed Hyundai's TSB
17   linked in the video. Although the TSB purported to describe a "fix," at no point did
18   the TSB disclose that the "fix" was to cap the charger's amp level at 23, thereby
19   almost doubling his charging time. In March or April 2023, he took the TSB to his
20   local dealership (Rick Case Hyundai, in Roswell, Georgia), but the technicians there
21   were unaware of the software update. He asked them to perform the update, based
22   on his understanding that it would fix the problem with the charging shutdowns.

23         17.     In July 2023 he noticed that his charging was limited to 23 amps, and
24   his charging time was now 11 or 12 hours. When he plugs in the charger, initially it
25   shows that he is charging his battery at 9.6 kilowatts, but it quickly drops down to
26   about 5.5 kilowatts. If he unplugs it and plugs it back in, it will briefly charge at the
27   higher rate, but then it will drop down once again.

28

- 6 -

CLASS ACTION COMPLAINT

18.     In the days and weeks preceding Plaintiff's purchase, and in contemplating his vehicle needs, Plaintiff saw and recalled Defendants' internet advertisements and sales brochures, and heard statements from Defendants' dealership sales representatives wherein Defendants claimed that the Class Vehicles charged within an approximate seven-hour window with a Level 2 charger.  Absent these representations, Plaintiff would not have purchased the vehicle, or would have paid less for it. Neither Defendants nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the Charging Defects. Had Defendants disclosed the Charging Defects, Plaintiff—through his research prior to purchase—would have received these disclosures, and either would have not purchased the Class Vehicle, or would have paid less for it. Accordingly, Plaintiff and each Class member suffered concrete economic injury as a direct and proximate result of Defendants' wrongful, deceptive conduct. As deemed appropriate, Plaintiff's and each other Class member's ascertainable losses include, but are not limited to, the full purchase price of the vehicle, out-of-pocket losses by overpaying for the vehicles at the time of purchase, decreased performance of the vehicles, diminished values of the vehicles, monetary loss in the form of increased energy costs, and benefit of the bargain damages. Defendants have unjustly enriched themselves as a result, and Plaintiff is entitled to a pro rata share of Defendants' disgorged profits.

### 3.     Florida Plaintiff

19.     Plaintiff John Nixon is a resident of Boca Raton, Florida.  On or about June 21, 2023 he entered into a two-year contract to lease a new MY 2023 Ioniq 5 from Brandon Hyundai in Tampa, Florida for a total of $27,000.  He has a Level 2 charger.

20.     Plaintiff Nixon has experienced problems with the charging system of his vehicle.  In particular, when he charges his vehicle, he initially gets 8.3 kilowatts

CLASS ACTION COMPLAINT

011183-11/2316622 V1

an hour, but then the charging drops down to 4.3 KW, which means that his vehicle only charges at 5% per hour (or 20 hours for a full charge).

21. In the days and weeks preceding Plaintiff's purchase, and in contemplating his vehicle needs, Plaintiff saw and recalled Defendants' internet advertisements, sales brochures, and heard statements from Defendants' dealership sales representatives wherein Defendants claimed that the Class Vehicles charged within an approximate seven-hour window with a Level 2 charger. Absent these representations, Plaintiff would not have purchased the vehicle, or would have paid less for it. Neither Defendants nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the Charging Defects. Had Defendants disclosed the Charging Defects, Plaintiff—through his research prior to purchase—would have received these disclosures, and either would have not purchased the Class Vehicle, or would have paid less for it. Accordingly, Plaintiff and each Class member suffered concrete economic injury as a direct and proximate result of Defendants' wrongful, deceptive conduct. As deemed appropriate, Plaintiff's and each other Class member's ascertainable losses include, but are not limited to, the full purchase price of the vehicle, out-of-pocket losses by overpaying for the vehicles at the time of purchase, decreased performance of the vehicles, diminished values of the vehicles, monetary loss in the form of increased energy costs, and benefit of the bargain damages. Defendants have unjustly enriched themselves as a result, and Plaintiff is entitled to a pro rata share of Defendants' disgorged profits.

**B.     Defendants**

22. Defendant Hyundai Motor Company ("Hyundai Motor") is a South Korean multinational automaker headquartered in Seoul, South Korea. Hyundai Motor is the parent corporation of Hyundai Motor America.

23. Defendant Hyundai Motor America ("Hyundai America") is an automobile design, manufacturing, distribution, and/or service corporation doing

- 8 -

business within the United States. Hyundai America designs, develops, manufactures, distributes, markets, sells, leases, warrants, services, and repairs passenger vehicles, including the Class Vehicles.

24.    Defendant Hyundai America is incorporated and headquartered in the state of California with its principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708. Hyundai America is the American sales, marketing, and distribution arm of its parent company, Hyundai Motor, overseeing sales and other operations across the United States. Hyundai America distributes and sells a complete line of Hyundai vehicles through more than 800 dealers throughout the United States. Money received from the purchase or lease of a Hyundai vehicle from a dealership flows from the dealer to Hyundai America and Hyundai Motor. Hyundai uses its nationwide dealerships to communicate with Plaintiffs and putative class members.

25.    Defendant Hyundai America engages in continuous and substantial business in California.

26.    On information and belief, Defendant Hyundai America is responsible for the distribution, service, repair, installation, and decisions regarding the Hyundai Class Vehicles as they relate to the Charging Defects.

27.    Defendant Kia Corporation ("Kia Corp.") is a South Korean multinational automaker headquartered in Seoul, South Korea. Kia Corp. is the parent corporation of Kia America, Inc. As of December 31, 2020, Defendant Kia Corp.'s largest shareholder is Hyundai Motor, which holds 33.88 percent of Kia Corp.'s stock.[7]

28.    Defendant Kia America, Inc. ("Kia America") is an automobile design, manufacturing, distribution, and/or service corporation doing business within the

---

[7] 2019-2020 Hyundai Motor Annual Report, https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/ir/financial-statements/hyundai-motor-company-annual-2020-consolidated-final-v2.pdf.

CLASS ACTION COMPLAINT

1   United States. Kia America designs, develops, manufactures, distributes, markets,

2   sells, leases, warrants, services, and repairs passenger vehicles, including the Kia

3   Class Vehicles.

4        29.   Defendant Kia America is incorporated and headquartered in the state

5   of California with its principal place of business at 111 Peters Canyon Road, Irvine,

6   California 92606. Kia America is the American sales, marketing, and distribution

7   arm of its parent company, Kia Corp., overseeing sales and other operations across

8   the United States. Kia America distributes and sells a complete line of Kia vehicles

9   through more than 755 dealers throughout the United States. Money received from

10  the purchase or lease of a Kia vehicle from a dealership flows from the dealer to Kia

11  America and Kia Corp. (together, "Kia"). Kia uses its nationwide dealerships to

12  communicate with Plaintiffs and putative class members.

13       30.   Defendant Kia America engages in continuous and substantial business

14  in California.

15       31.   On information and belief, Defendant Kia America is responsible for

16  the distribution, service, repair, installation, and decisions regarding the Kia Class

17  Vehicles as they relate to the Charging Defects.

18       32.   Genesis Motor LLC is the luxury vehicle division of the Hyundai Motor

19  Company, and is headquartered in Seoul, South Korea.

20       33.   Genesis Motor America LLC ("Genesis America") has its principal

21  place of business at 10550 Talbert Avenue, in Fountain Valley, CA (the same

22  location as Hyundai America).  Upon information and belief, Genesis America is

23  responsible for the distribution, service, repair, installation, and decisions regarding

24  the Genesis Class Vehicles as they relate to the Charging Defects.

25       34.   On information and belief, the design, manufacture, modification,

26  installation, and decisions regarding the Class Vehicles and the Charging Defects

27  were made exclusively by Defendants.

28

CLASS ACTION COMPLAINT

011183-11/2316622 V1

35.     Genesis America engages in continuous and substantial business in California.

## III.   JURISDICTION AND VENUE

36.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 & 1332. This Court also has supplemental jurisdiction over the state law claims because those claims are integrally related to the federal claims and form part of the same case and controversy under 28 U.S.C. § 1367.

37.     The Court also has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from the Hyundai Defendants, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.

38.     This Court has personal jurisdiction over the Hyundai Defendants by virtue of its transacting and doing business in this District and because many of the Hyundai Defendants are registered to do business in California. The Hyundai Defendants has transacted and done business in the State of California and in this District and has engaged in statutory violations and common law tortious conduct in this state and in this District.

39.     Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is proper pursuant to 18 U.S.C. § 1965(a) & (b) because the Hyundai Defendants transact affairs in this District, and the ends of justice require it. Venue is also proper in this District under 28 U.S.C. § 1391(b)(3) because the Hyundai Defendants reside in this judicial District for venue purposes.

## IV.   FACTUAL ALLEGATIONS

**A.     The Class Vehicles are defective and do not charge as advertised.**

40.     A battery's charging time depends on three variables: its capacity (measured in kilowatt hours), the amount of current being supplied to it (measured in

amperes, or "amps"), and the pressure in the electrical circuit (measured in volts). Holding battery capacity and voltage constant, the greater the current (i.e., the more amps), the shorter the charging time.

41.     The Class Vehicles can recharge their batteries at a variety of currents at home, ranging from 6 to 48 amps.  A 240-volt "Level 2" charger charging at 48 amps should result in a fully charged vehicle in about seven hours. Defendants advertise that the Class Vehicles can be charged with as much as 48 amps of alternating current.

42.     Despite Defendants' representations, users of Class Vehicles report that vehicle charging sessions repeatedly fail at 48 amps. Users must manually turn down the charging current (e.g., from 48 amps to 40 amps) to prevent charge failure. However, some Class Vehicles continue to experience charging failure at these lower currents, with some owners reporting charge failure at as low as 28 amps. Even when the Class Vehicles are able to charge without failure at these lower amperages, they take a much longer time to charge.

43.     Upon information and belief, the Class Vehicles contain a defect in the charging port design which causes overheating, especially at the higher amp range. When the port reaches a certain temperature, the vehicle terminates the charging session as a safety measure, but it does not restart the session once the port has reached an acceptable temperature.

44.     Reports state that charging failure occurs more frequently when outside temperatures are higher and frequently occur within 30 to 60 minutes of initiating a charging session that is designed to last hours.

45.     This failure leaves Class Vehicle owners and lessors to either constantly monitor charging sessions and manually ensure they complete by repeatedly restarting the charging session after each failure, or else contend with unexpectedly empty batteries when they return to their Class Vehicles, expecting them to be fully charged.

CLASS ACTION COMPLAINT

011183-11/2316622 V1

46.    Owners and lessors of affected Vehicles have reported Defect 1 for over a year, and in spring 2023, Defendants released a technical service bulletin ("TSB") and software update designed to address Defect 1. The TSB causes Vehicles to lower the current to 23 amps if overheating occurs. However, charging at 23 amps means that the Vehicles charge at more than twice the amount of time as advertised, leading to charging times of at least 14 hours (Defect 2).

47.    The observed overheating is itself evidence of wasted energy, as heat is simply the flow of thermal energy. A hot charging port indicates that energy being pumped into the Class Vehicles is not charging the battery and instead is dissipating as heat. Class Vehicle users pay for this wasted energy via higher utility bills.

48.    The Charging Defects cause further wastage (and higher utility bills) because the Class Vehicles experience greater relative charging losses when users are forced to recharge their batteries at lower amperages to prevent charge failure. Class Vehicle users would experience less relative charging loss, and therefore less wasted energy and lower utility bills, if they were able to recharge their batteries at the 48 amps that Defendants advertise.

**B.    Defendants must have known about the Charging Defects prior to production.**

    **1.    Defendants knew about the Charging Defects based on their own monitoring of the industry.**

49.    Defendants must have known about the Charging Defects from an array of sources, including its pre-release and post-release monitoring data and complaints made on internet forums.

50.    It is standard practice for automobile manufacturers such as Defendants to engage in extensive pre- and post-launch testing of their vehicles. This design, engineering, and testing data is unavailable to Plaintiffs without discovery, but upon information and belief, analysis of this data most likely would have revealed the Charging Defects.

CLASS ACTION COMPLAINT

011183-11/2316622 V1

51.    Defendants routinely monitor the internet for consumer complaints. Defendants also collect and analyze field data including, but not limited to, repair requests made at dealerships and service centers, part sales reports, and reports prepared that have reviewed vehicles for which warranty coverage is requested.

39.    Defendants also knew about this condition because their customer services department reviews and receives complaints from customers and can identify potentially widespread vehicle problems and assist in diagnosing vehicle issues. This is evident because, as the following section reveals, multiple customers mention contacting the customer service department when they are experiencing the Charging Defects.

**2.    Complaints on publicly available internet websites show that Defendants have known about the Charging Defects.**

**a.    YouTube comments**

52.    In the comments section of the YouTube video summarized above (*see* ¶¶ 6-7), numerous viewers confirmed in the weeks since the video's publication on July 3, 2023, that they were experiencing the Charging Defect as well.  Among the comments are the following (all typos in original):

> **@cframe47**
> Really appreciate you testing this out and raising the issue with Hyundai, as they only seem to respond to public pressure to make these sorts of issues right. I had a few months of 48amp charging without issue, and then I just started having regular charging failures. Dropped to 40 amps, and got another six months or so of reliable charging, then I started having issues again. I've now dropped down to 32 amps, which is technically enough for me, but I'm just waiting for the problem to get worse yet again. Also a chargepoint home flex unit, but given chargepoint's got one of the best built chargers I hardly think that's to blame. FWIW I live in SoCal and have my charger installed outside. My hunch with this is that the system isn't very well built/designed, and the minor natural wear and dust/dirt that accumulates in the charge port is enough to introduce unwanted resistance and heat. I've seen posts where people had their charge port replaced, and the

CLASS ACTION COMPLAINT

issue went away only to return again, so it could well be the trigger for the issue (doesn't excuse the poor design or component reliability).

**@BJoe**
I had the TSB installed to lower the charge rate instead of failing and while it was a huge relief to know it would keep charging all night now I totally agree that we deserve the charging speed that was advertised to us. These types of features are what a lot of EV drivers use to choose which car to buy.

**@audiovillan1**
I have had the same issue with my I5. 48a for a while about 2 months then started having issues about 1hour into charging I then dropped to 40a that was good for about 2 months then started having problems again i am now charging at 35a and it doesn't matter how low the soc was it will fully charge with no issue this has been for about 5 months so far finger's crossed. I use the Wallbox 48a evse. My car is parked indoors in an attached garage in the Chicago suburbs. I have had issues whether hot or cold outside at higher ac charge rates

**@StephenByersJ**
Thank you for calling out Hyundai Motor Group about this. I 100% agree that the TSB is a band-aid work-around at best, and not an actual fix. They need to initiate a recall to replace the charge ports of affected customers. But knowing HMG they will do the bare minimum unless owners make a bigger fuss. 2022 EV6 Wind + hardwired ChargePoint Home Flex @ 40A and started having issues as the temperature rises with the season. Didn't have any issues last year when we got the vehicle at the end of August. With ChargePoint being one of the highest-end brands in L2 charging, I think it's safe to say that this is not down to a poor fitting connector on the charger side and definitely a problem with the vehicle's charge port.

**@brandonjacobs9102**
Thanks for doing this. I have been struggling with this for 14 months now on my 2022 SEL AWD. My car fails at 32A all summer here in KY. It's not like I'm in Arizona where it's really hot. This has been the single most frustrating issue for me and really turns me off to buying another Hyundai EV. I have a 48A Wallbox and have to run it at 29A to make sure I can get a charge.

**@maximemclaughlin9752**

Thanks for doing this. It needs to be addressed by Hyundai. The heat generated by electrical current is proportional to time and current squared, have you tried charging from a very low percentage (0-10%) all the way to 80-100%? I've had the issue a bunch of times at 48 amps, bumped down to 40 amps and experienced it for the first time yesterday charging from 10% to 80%. It was able to go for 3.5 hours before it stopped (got to 65%). If you regularly charge <15% this problem can easily go unnoticed for a long time

**@Maverickzeros**

As an ioniq 5 owner since January and having charge failures on the higher 2 of the curent limits in the cars settings, I'm hoping this will encourage Hyundai to address it like Technology connections brake light video did.

**@CarlPugh**

Bless you! We have been struggling with this exact issue for over a year now. Seems like it's time to file a class-action lawsuit. Like many others the car charged fine for the first couple of months and since then has stopped after 45-60 minutes. Also like many others we have a Charge Point Home Flex and initially thought the problem was with the charger. But it's because that's one of the few home chargers that can actually output 48 amps.

**@Hankdiego**

Just experienced my first charge failure at 40 amps since owing my 2022 IONIQ 5. We've had a pretty cold winter and mild spring in Southern California but now that things are heating up, the car can't handle the higher heat. I'll ask about the TSB, but I agree, we need a better fix. Thanks for helping hold Hyundai's feet to the charging fire!

**@Visvism**

Happening to me as well. 2023 Ioniq 5 SEL RWD. As soon as the ambient temp went up in my garage, 48A was no longer possible. I now have my hardwired Emporia charger set at 40A just to make sure I don't experience any issues with charging. I submitted a note to Hyundai and NHTSA. Hyundai responded to me and I could tell the person responding had no clue what I was talking about because they told me to contact my local dealership

- 16 -

CLASS ACTION COMPLAINT

to work on my "paint" issue. What the heck does paint have to do with my charging concern!?!

**@rijoshj**
Had this happen over the weekend for the first time in 9 months and 14k miles of owning it. I did get the recent TSB installed at the dealership and this is happening right after that. makes me wonder if a bug in the program caused this or not. Maybe if you had an issue, it would have been better with the ramp down and up, but for someone like me who had no level 2 charging issues, this is such a bummer

**@tonyfortune4020**
Thank you for this information. I was worried that the problem was just mine, living down in "hot" Florida. I have had to lower my charging rate ever since the temperature in my garage has risen above 80 degrees. I have also had an issue with a fast charge at an Electrify America station, but that has only happened once. BUT I have only had to charge a few times away from home.

**@atbat82**
Thank you for filming this! I've been having the same issue for 8 months. My dealer (Key Hyundai) doesn't have a 48amp charger (I think it's 24 amp) so they can't replicate the issue. I've been on the phone with Hyundai customer support at least 4 times and had the car in for service 3 times. Still no joy. Frankly, it's unacceptable.

**@Waterwater123456**
I also started having this problem about five months after I purchased my 2023 Ioniq five Limited, this corresponded to the time when the weather warmed up. I had gone to the expense of installing a new panel in the garage to deliver 60 amp service so that I could charge at 48 A, so I also am very disappointed that I have to use a lower charging rate to charge my car

**@yvanmichaud3466**
I have only incountered the problem since this June. I guess it's so cold here in Canada charging at 48A/11kW did not cause this issue to occur. I have therefore had the TSB installed and now at least the start of the charge is at 11kW and about an hour or so later it falls to 7kW. My only consolation is that it does not completely fail as before. Thanks for transmitting our concerns

CLASS ACTION COMPLAINT

as one of the reasons I got this vehicle was for its fast charging capabilities!

**@dyl421421**
I've owned my Ioniq 5 since August and have had charging failures since November. My Ioniq 5 does not charge anywhere near the advertised charge rate without failing.

If I attempt to charge above "Minimum" charge rate, the charge session will fall to minimum charge rate (20A), taking 2.5 times longer to charge than able. I've got the TSB update so this is the expected behavior, and the dealership I went to refused to acknowledge there was anything wrong. Their AC charger is 32A at 208V so they never even saw the issue.

Hoping your video will make some folks hurry around at Hyundai to get a fix!

**@tylermorrismusic2493**
I've owned my Ioniq 5 since March of 2022. It charged well on 40 amps for close to a year, and then started experiencing this exact problem. The TSB was a band-aid, as you said. Funny enough, the tech didn't believe me when I brought the TSB in and showed him. He said "I don't see that coming up for your VIN." After they plugged it in, he came out to apologize. Apparently they can't even reference the TSB until they plug in and see that the car has experienced this failure. I love the car - but fix what is clearly a problem, Hyundai.

**@weaktwos**
Yup, this happened to me as soon as the Texas heat started. For the first few months, it was just fine. But charging at 32 has been reliable.

**@grossbran**
I've been dealing with this issue as well with my 22' Ioniq 5 SEL AWD. The issue started a few months ago. Unfortunately even at 32 amps it fails after an hour. I have a brand new Level 2 charger and I cleaned everything with contact cleaner. I took it in to the dealership and all they did is install the update. But now the car charges so slowly it can be really challenging if I have a day of heavy driving. I wanted a 48 Amp charging experience so I could stop at home for 2 hours to "top off" and be ready to do more driving for the day, not wait overnight.

- 18 -

CLASS ACTION COMPLAINT

**@user-rc3jw1eb8v**

My 2023 IoniQ 5 worked great on a 40+ amp charger for about
four months (it was winter) however lately it experiences the
same failure as everyone else. I bought this car for the charging
capability. It is now summer with average daytime temps in the
80s. I can't believe Hyundai has not come up with a hardware
fix. I would love to see a class action suit to light a fire under
these guys.

**@IvanSchustak**

Thanks for doing this. I use a Chargepoint Home Flex plugged
in at 40amps. It's been mostly fine, with one unexpected failure.
But I've also been paranoid since that failure, and check the
charge overnight (usually between 2-3am) to make sure it's
going. This isn't acceptable, and Hyundai needs to fix it.

**@RonMilesLokheed**

Same issue here.  For the first month or so, my 2023 Ioniq 5 SE
charged without a problem at 48A. Then it started failing less
than an hour into charging. Having the TSB applied did not
resolve the issue. I had to step down my charging unit to 32A,
and since then it has not failed. But of course, it also takes
significantly longer to charge.

**@seanregan9177**

I have the same issue. When I first bought the car I was able to
charge at 48A no problem but after about a month of owning it
I've had to turn it down to 38A and even still I sometimes have
the issue and wakeup to the "electric vehicle charging alarm"
notification from the app. I agree that this definitely needs to be
fixed and don't want the TSB hiding the issue

**@mobilitytoday**

THANK YOU FOR CALLING THIS OUT at 48amps !!! My car
was bought back by Hyundai because of this. The problem is the
gauge of wire for low voltage to the battery. It does a thermal
shutdown. I was working with Hyundai engineers for weeks and
they pretty much came to this!! I tweeted this off linking your
video. Thank you!!!!! RECALL!!!!! Huge safety concern with a
thermal shutdown.

**@stevenloya3127**

I've been experiencing this issue for some time now and my
dealership had no idea what I was talking about. I'm also glad I

- 19 -

CLASS ACTION COMPLAINT

switched jobs and no longer have a long commute because I couldn't trust charging it overnight.

**@mousepad3000**
@TheIoniqGuy  Thanks for bringing more attention to this problem. This car does not charge at 48A as advertised.

I had no issues in the first couple months charging my Ioniq 5 purchased in March. Ever since temperatures started to climb around mid-May, though, I've been running into this problem every time I charge. On warmer days I'm lucky to get 30 minutes before it overheats. I had to lower my charging current to get it to charge reliably.
Edit:
I'm using a ChargePoint Home Flex like a lot of others commenting. I'm doubtful that the EVSE is the problem, though, as the Flex seems to be far and away the most popular 48A model.

**@davehooper5462**
Wow thanks for this. I thought there was something wrong just with my car but apparently this is a known issue. This was happening since last July when I bought the car. I finally lowered the charge rate to around 40A and it charges fine now.

**@JayLiquori**
Experiencing the drop in rate as well. Unacceptable I feel, especially since I payed for a thick 60A copper wire running from one side to another side of my house. This is not as advertised.

**@GZIM86**
Same issue w/ my 2023 I5. It started this summer and I can only use the lowest charging setting otherwise the session cuts out. This has not effected DC fast charging luckily, otherwise road tripping would be out of the question.

**@AmanSharma-pz2or**
Thank you for this video. I have a 2023 Ioniq 5 Limited model and EV Juice net Level 2 charging. After about 6 months, I started noticing that the car won't charge fully after an overnight charging session. I tried to rectify this with EnelX and they told me to perform some diagnostics one of which involved reducing

CLASS ACTION COMPLAINT

the charge current from 40A to 25A and the car started charging fine.

I totally agree with you in this case that Hyundai needs to fix this issue and have falsely advertised.

**@ouch1011**

I have the same ChargePoint charger. My car worked fine charging at 48A for about 5 months then it started having issues. It went from working, charging from 0-100% at 48A to overheating within 30 minutes. My car will charge at 48A just fine on other chargers, getting to about 160-170F after several hours at 48A but overheating after 30 minutes on my home charger. I got a warranty replacement for my CPH50 but I haven't installed it yet. The fact that the car will charge just fine (but still get warmer than I'd expect) on multiple 48A public chargers but overheat on my home charger at 48A means that the car isn't 100% to blame. That said, my Model 3 charges just fine at 48A every day. The connector doesn't even get warm, while it gets uncomfortably hot with the Ioniq5.

The TSB isn't a fix for this issue. It's barely even a band-aid. Heat is caused by resistance in the circuit, either due to poor connection or undersized conductors. Hyundai needs to figure out what is causing the resistance and fix it.

**@richdavis8006**

I have this issue with my Kia EV6. When I asked the service techs at the Kia dealership, they told me it was an issue with my charger at home. They did not mention the technical service bulletin or the "fix". I currently have to set the charging rate in the settings menu on the EV6 to the lowest setting to get a successful charge, reliably, overnight.

**@CrispyTaytortot**

I have the Home Flex and have the same issue even at 40A. This is unacceptable. I've had to derate my charger to 32A to solve the problem. Imagine if I didn't have this flexibility with this charger. I simply wouldn't be able to charge without changing a setting in the car every single time. Hyundai needs to address this ASAP.

**@GeoffJohnson**

Thanks for doing this, I also have this problem and it drives me crazy.

- 21 -

CLASS ACTION COMPLAINT

**@bradbarger**
Thank you! Ioniq certified dealers refuse to acknowledge this problem on my Ioniq 2023 6 SEL RWD. Current is not cut like all other E-DefendantsP vehicles, it just gets reduced and provides a message on the car display. I charged fine for the first 2 months of ownership at 40 amps then the problem started. We are getting warm here in Phoenix so now I am down to 32 amps with car setting on minimum to avoid the AC charger (charge port) overheat condition. My L2 charging time has doubled making it hard to charge during off peak hours let alone obtain enough charge for the next day. I have tried many EVSE so it is the car, not the charger or the owner. My last dealer visit (AutoNation Hyundai Tempe) set my AC charging and DC charging limits to 50% and charge current to minimum as their "fix". Chapman Hyundai Scottsdale only said the car is working as designed and refused to even pull it in the shop. Very disappointed with Hyundai as my first time with manufacturer.

**@kentmcvety53**
I am having the same problem with my Ioniq 5 SEL RWD.  It was fine for the first ten months of ownership, but then the problem started.  I was charging at home with a level 2 at 40 amps.  I started having problems when the charging would shut down after the first 30 minutes.  I would have to restart it multiple times to reach 80 %.  Before I could charge to 100% with no problem.   I reduced the amps in the Infotainment from "maximum" to "reduced."  I loss 10% speed charging at 8.5 KW instead of 9.5 KW.  It works fine at the lower speed.  I took the car into Hyundai who replaced a wiring harness that had gone bad.  They did not do anything to the software.  After replacing the wires, it worked at full speed for about three weeks, before starting to shut down again.  I am back to charging at 8.5 KW.  I can still charge at "maximum" at the Electrify American stations. Only my level 2 charging at home is affected.

**@user-re5pz6eu3v**
I have a 2022 Limited purchased in July 2022 in RI. This issue started a few months after installation of a Lectron V Box 48a. I had the TSB completed and it just lowered the charge rate. This is a major issue for me. Actually had ordered another I5 but cancelled given this issue and limited OTA updates.

CLASS ACTION COMPLAINT

**@galland101**

I've been charging at 40A over the past year I've owned my I5 and never had any problems until now.  The last 2 charging sessions the charging stopped at some level above 80%.

**@MSteamelectric**

I am starting to have the same issue and it's happening at 32A as well. Only works at 4.5kwh ~18-20A very very disappointing

**@zoltronr6**

I have seen this failure many times. Needed to lower the charge rate long ago. My Lightning charges like a champ with the same Charge Point charger.

**@Lorraine917**

Hyundai replaced the VCMS Assembly in October 2022 due to a 40A charge stopping. Worked fine until last week, when it started stopping again. Had to lower the input to keep it charging. It's scheduled to go back to the dealer at the end of the month. They do need to fix this rather than replacing a $744.49 part every nine months.

**@dougm446**

My Hi5 worked perfect for the first 6 months at 40A no problem outside in summer heat of 100 degrees.  Now I have to charge at 32A or lower even in the winter.  The TSB is not a fix.  The car is rated up to 48A and I'm using a quality charger as well.

My opinion is the cars will continue to degrade the amps it can charge at the older they get.  I think it's the port itself on the car degrading.

**@rickcombes1286**

Thanks Ioniq guy. I drive for Uber and this has been driving me crazy. Trying the 32 Amp tonight. As an added kick in the rear, the Hyundai app gives really stupid reasons for the failure. I received this error message, "Your vehicle is not charging. Please try again. Ensure the vehicle ignition is OFF and gear shift is in park"

**@shep64**

I bought my 2022 Ioniq 5 SE at the beginning of May 2022. Never had a problem charging at home until about 2 months ago. Charging would just stop during charging. Luckily for me I'm retired so I would just start the charging again. Sometimes it

- 23 -

CLASS ACTION COMPLAINT

would take me about 3 times stopping and starting charging to go from 40% to 80%. I lowered the rate of charging and now it doesn't stop charging.

**@paulsinel515**
My level 2 charger charges at 48 amps and it stops charging in warm weather. I had my electrician come back and review the original work on the circuit he installed. I exchanged my charger for a new one and the new one is no better. I have another EV…..no problem. So it's the Ioniq 5.

**@timsheehan8713**
Bought in June 2022. No problems last summer at 40 amps but once it got warm in the spring if it's over 70 degrees it will fault every time. We have not gotten the TSB but we have been ok at reduced. The TSB reducing the charging rate really isn't an acceptable solution.

**@SantSrinivasan**
Mine is manufactured in May 22 and bought in July 22. I have the same problem charging at 48 Amps, works at 40 Amps. My charger is Juicebox hardwired for 48 A

**@greenmountainlaw**
I'm in Vermont. Bought my Ioniq 5 in early January 2022. Experienced charging failures at 48 amps at warm temps all last summer. Now having them again since we've had temps in the higher 70s to 80s. This is extremely frustrating and is unacceptable. If Hyundai can't / won't fix this ASAP I'm going to need to reluctantly sell this car and buy an EV from a different manufacturer.

**@motominis**
count me in. I had failed charges even at 40a before the TSB, I honestly havent paid attention since the TSB since it always charges. I am highly annoyed to find out it was a band aid fix.

**@RuslanDorfman**
I have the same issue with GV60 and Ioniq 5

**@Nuttycashew5**
I use a Lectron V Box 48 amp charger and I've had issues ever since the weather heated up. I first lowered the allowed amps in the car settings to 90% so I would be charging at about 42 amps. Same problem. I then lowered my charger to 40 amps. Same

- 24 -

011183-11/2316622 V1

problem. I then set the car settings to 90% with my charger at 40 amps so it would charge at about 36 amps. Same problem. Getting a little ridiculous.

**@michaelsilverstein7404**
Same problem with my MY2023 I5 AWD Limited. Have the car since January 2023, no problems at 48A with my Chargepoint Home Flex until May 19th. ODB2 dongle showed peak of 195.8F on April 22nd (garage temp 72 here in NJ) prior to overheating on May 19th at 48A. Been at 40A since May 20th with no problems with observed peaks of 212F on May 24th (garage temp 72) and 226.4F on June 29th (garage temp 79). I am adjusting the Chargepoint rather than lose control and lock in the TSB fix for my garage and public charging. I could also use the dashboard setting which I haven't used since I charge away from home so rarely. My overnight charging is completing adequately at the slower setting, but Hyundai needs to make good on their own performance specs, and not by giving owners a lame TSB workaround just slowing things down. Thanks for continuing to publicize this problem.

**@chrisrose4369**
I have this issue on my 2023 AWD Limited. I am using the 50A Chargepoint hardwired into my panel on a 60A breaker giving me 48A/11kw.  I live in AZ and it will charge at the full 11kw for 12min then ramp down to 7.3kw for the remainder of the charging session. That was after having the spring TSB installed. Before the update I could only charge for 10 - 15min then it would overheat and cut out completely. You are correct Hyundai needs to address the root cause. Thanks for the video showing exactly what is happening and bringing awareness.

**@TeddyD802**
I got my car in the winter so I didn't notice this problem until spring. Really irritating and makes me wonder why so much heat is being created? Makes me wonder if it's an inverter issue. Anyways I want to charge at 48A and my car can't do that.

**@dsipropertiesllc6049 (excerpted)**
I own a 2022 SEL since new which was delivered in mid August of 2022. Current milage is 10,575.

CLASS ACTION COMPLAINT

I also had an Emporia Smart Home EV Charger | Energy Star | UL Listed | 48 Amp | 24' Cable | 22" NEMA 14-50 × 1 hardwired installed by a professional electrician prior of taking delivery.

Hyundai specifications states that I5 is capable of charging with 10.9KW at 240 Volts:

So, I set my charger to charge at 10.8KW maximum. For the first two months this was not a problem. Then I started to get messages through my APP that charging was stopped. I looked at my Emporia APP and could see that charging stopped for about a minute and then started up again. Once this problem started it happened every time I charged the car. I live in Texas and the summers are hot, and when I checked the Plug connection to the car, the handle was warm to the touch, but not hot in any way. So I reduced the charge setting to 9.5KW and I had no problems at all going through the winter.

However, since the beginning of March I am getting the same charging interruptions, now with the same reduced setting of 9.5KW. It got so bad that it got annoying (messages from APP) and concerning that I reduced the charge to 8.5KW. That seemed to help, but since the last month it also has given me trouble. The difference is that it will charge longer (about an hour) before kicking off, and the ambient temps are higher (mid 80s).

So, to me it shows that this problem is getting worse. The local dealer has no answers, and currently I am discussing this issue with the dealer from where I bought the car from (about 2 hours drive).

**@eric4133**
Over the winter I was able to charge at work on the L2 chargers just fine, now that it's summer, anything above minimum (60%) it fails.

**@davejameson9773**
I have a 40 Amp charger and my 2023 had no issues - until the summer. I live in Texas and when it is hot out (95F+ ) I get charging alarms from blue link about every 10 mins. I can see from my charger (Emporia) that the voltage drops to about 25 Amps and then goes back up. What this does is sets my phone's notifications off all day to the point that I now need to charge

over night when it is somewhat cooler (it's Texas, so cooler is in the 80s and no sun shine). Could be worse because for me it has never stopped charging completely but takes longer and is really annoying.

**@TXCraig**
I have the same issue with my EV6. I have the "fix" and mine slows down after an hour or so

**@jimgray1967**
I have a 2023 Limited with a ChargePoint Home Flex EVSE, hardwired with a new 60 amp circuit and a short run of 6AWG copper. Took delivery around 1 October 2022 and it worked just fine at 48 amps until mid January when it started to charge for a while then stop. Had to unplug and restart multiple times to get a full charge. Had to get up in the middle of the night to resume charging many times. Did troubleshooting with ChargePoint to no avail. Does the same thing on my son's 40 amp Tesla charger and a friend's HomeFlex. It is the car!  The TSB fixed the unplugging part but it still overheats at both 48 and 40 amps in about 30 mins and drops to 32 amps where it stays until charging is complete.  This has been a nuisance since I bought the high-end charger and installation specifically to utilize the 48 amp capability. I have read elsewhere this is a hardware issue with the charging harness. It is certainly a known problem that Hyundai needs to fix.

**@user-ld9wq2ni4q**
Add my name to the list.  I've had this issue since purchasing the car.  After taking it to the dealership 3 separate times (each time the dealer was clueless on all things EV), I finally went to a different dealer who ended up installing the TSB (without asking me...).  I told them it was just a bandaid but the dealer wasn't hearing it and told me to take it up with corporate.  I reached out to corporate and after a few weeks of waiting for a response, they just told me to take it to a dealer to get inspected!  I'm at my wits end with this issue...

For the technical details, I am one of the unfortunates that can't get through a full charge using a 32A charger at max rate.  I've tried all 4 32A chargers at work, as well as my 40A charger at home and all eventually fail (or now with the TSB, throttle to minimum current).  Agreed with your statement that this is now

CLASS ACTION COMPLAINT

false advertising to say you can charge at 48A.  2022 Ioniq 5 AWD limited, purchased July 2022, have had the issue since late July 2022.

**@londonosebastian631**
Here from Canada Montréal . Juicebox 48A 11.3 KWh normally On winter everything was ok , charging no problem , but as soon as the temperature starts to go higher then 10 Celsius outside my car start not charging, i had to lower to 6.2 kWh in the option of minimal charge to be available to charge i purchase the car because the charging was amazing but now with this problem the car is useless for me and I had to take my old car several times because I'm not been having enough to go to work and come back.
I feel that they should have fix this problem long time ago , is been 4 months and still not been fix , not even at the public fast charge (level 3) to bee available to do road trips, so I don't really recommend this car for now for the people how need lot of km on a daily basis.. sorry Hyundai but you need to fix this problem

**@danholder-pointerridge5086**
I had the TSB installed. Level 2 at 40 amps, drops to 22 amps after 1/2 hour, 2022 Kia EV6. I'm lucky to only have to pay 13 cents per KWh at all hours of the day but having to charge the car for 10 hours to get a full charge is frustrating and false advertising. Hyundai/Kia needs to get this fixeD ASAP.

**@jt-i5**
In the video, the car stopped charging at 212 degrees F, mine is a 2023 SEL and it stops at about 240 degrees F - maybe there's a different temp. limit on 2023's?  In any event, I bought a 2023 SEL in Feb. - had no issues charging at 48A until May - in my case I had my Chargepoint start charging at 11PM - it took me a while to notice that starting in May, the charging was turning off and on due to overheating - just ran a test a couple of nights ago using the "reduced" charging speed and it overheated after 40 minutes or so (at 10 kW) - so in my case, the vehicle can only charge reliably using the "minimum" setting in the car which is 6.7 kW at home using my 48A Chargepoint Home Flex - I am still trying to figure out if I want the TSB or not, we definitely need a proper fix for this...

CLASS ACTION COMPLAINT

**@jays2473**

We have had our 2023 IONIQ5 for about six weeks. Charged consistently for four weeks in the L2 at work, then one day it just stopped. Now I must either physically reset the charger and try again somewhere about every fifteen minutes, or I have to tell the car to charge at minimum amperage. My dealer did not even know anyone was having L2 charging problems. They told me my only recourse is complaining to customer service at Hyundai

That's not what you want to hear when angry about a fundamental flaw in the most expensive vehicle youhave ever bought.

**@ethanowen2533**

I have an Ioniq 6, purchased in June near Charlotte, NC. I have a 48 amp L2 charger inside my garage. Twice since June12, it simply stopped charging after about 20-30 minutes. I will report it now to the NHTSA.

**@starlinxrick1**

Charging on GV60 has been shit-show starting last June (2022) after about of month of owning. They've replaced main charging unit, no change. Tried a number of other things until finally they replaced the charging assembly because they found resistance inconsistencies in it. That solved the problem for a while (maybe a month or two) until the GV60 stopped charging 12v, went into a limited driving speed mode and had to be flatbedded to dealer. Replaced ICCU. Fixed the 12v problem, but there's no way to tell if that affected the charging (which was working good) because now I have the bullshit band-aide software (TSB) that throttles the charge rate to avoid the problem from happening. After a year of this happening... and after a year of hearing how Ioniq and EV6 owners have the same issue for several years, it's pretty obvious it's not fixable. In reality, how many people really charge at 48 (11kW) anyway? I bet it's not many compared to the whole owner-base. Most of the home chargers are not even capable of that charge rate and the Level2 chargers you normally encounter at shopping centers, hotels, hospitals, etc... they're all 6kW. And for those of us trying to make 11kW work, I bet not many are really qualified to understand the band-aide TSB fix they put out... most people just accept it and move on. Definitely a HUGE knock against Hyundai/Genesis for me. And I'm a devoted fan... I have a Palisade, Elantra, GV60 and a G70. If it

- 29 -

weren't for Genesis of Cherry Hill being flat-out-awesome, I'd have bailed on this GV60 a while ago. Love the car, but not the charging game I need to play. Right now I'm settling for Medium charging because I'm not driving that often. Hoping for a fix someday but it looks like Hyundai gave up on it.

**@Alejandro-ut4up**

Had this problem on my 2022 Ioniq 5 and now after a couple of months with my 2023 Genesis GV60 it is also failing to charge at 48 amps, was working for a while at 40 but now only works at 32 amps. Not interested in getting the band aide software solution to address an obvious hardware problem.

**@Kevin-xg4ck**

When I initially got my car 1/2023 I was able to charge at 40 A for about three months and then I started to get the failures. Now I need to charge at 32 A. I brought the car to the dealership, including a printer TSB and they said that it did not apply to my car. I told him exactly what I have for charging and they instructed me to bring a video of the problem. I told him I did not understand how that would help. They were just buying time. They had my car for two days and I think that essentially no one knows how to deal with electric cars at the dealership even though they are certified.

**@Tstine2480**

I drive 1k miles per week. I need a full charge daily. Mine throws that message of charge failure at 32a. Not every time but it still does and I was charging at 40a for a while then it started throwing the charge error message. That's why I went down. To 32a.

**@thomasrider5852**

Mine wont even take 48A most I can ever get from mine is 9.5kw. Mine home charger puts it into limp mode very quickly here in Arizona where garage is 100+ degrees. If I reduce it down to 8kw in car I have not had go into limp charge mode with that, yet… TSB was pretty shit "fix"

**@lventuri82**

We have a hardwired charger and our charging fails when it's set to 48 amps. We're waiting for TSB but our dealer doesn't have any availability appointments for another 3 weeks.  2023 SEL AWD

- 30 -

CLASS ACTION COMPLAINT

**@rickysandhu3918**
I have a kia ev6 2023. Same problem started 2 weeks ago.

**@user-dz6ms9cq3z**
My dealer had my 2022 Ioniq 5 for 4 days and ignored me after telling them they needed to address the charging failures with the TSB fix. They told me it was my aftermarket charger and that I needed to purchase a Hyundai charger. I asked them where I could buy one and they couldn't tell me. Hyundai doesn't make a charger. After they performed the TSB my Mustcharge charger worked fine. Parks of Gainesville has an ill informed and incompetent service department.

**@lansr**
Had the choice between a model 3 and a Hyundai…. Chose the Hyundai… had issues. Super surprised. So so surprised.

**@jeffhardwick9404**
I did not have the problem for the 1st 6 months of ownership. However the last 10 months I am not able to successfully charge over 40A and sometimes 32A

**@arishem555**
RWD 2022. tired of that issue. need to plug, 20-30 minutes and overheated. Yes, I am in the hottest Houston season right now. But damn. Can I return it because of it ? 🙂

**@irawiss9879**
When I plug in. I charge at 9.5 kv. Since the tsb, it does not cut off, but it drops to 5.5 kv. Seems wrong. Fix it Hyundai!

**@JonathanHarvell**
Mine trips at 40A.

**@jonathan81pr**
My 2023 I5 fail at 48 and 40 amp. I have to charge it at 32amp.

**@rbdavis808**
Hyundai needs to stop making excuses about this, i.e., blaming the EVSE units. These failures have been documented happening with many different EVSE brands, yet no other EV seems to have this problem. Our 22 SEL charged at 40A with no issue for only about 6 weeks and then these failures began, forcing us to limit our charging to 32A. The TSB software patch is a bad joke, and I will never install it -- why would I want to have a 40A charge

- 31 -

session derated to 23A after 20 minutes instead of just setting my EVSE to output 32A where the car will allow the charge session run to completion at 32A? The car is advertised as chargeable at 48A period, not 48A for 20 minutes and then you're out of luck.

Between this and the ICCU problem Hyundai's EV brand is taking a pretty big hit, and I can no longer wholeheartedly recommend this car to others.

**@nexxusk**
So "#CHARGEGATE" is affecting my car. This started this June. MY CAR will not charge at 7kW here in Ontario, Canada. I am so angry. The dealer solution? Set AC charger to run @60%. 4.2kW!!!! Wow amazing! I own a piece of crap car. Major issue is right. Do not worry, since last fall since I found out that they would not be activating battery pre-conditioning for Canadian Ioniq 5 for winter, to all the people who ask about my car, I recommend Tesla and that I regret my purchase.

    **b.   Subreddit comments**

53.   There is also a Subreddit[8] (a community page on the Reddit website) dedicated to the Ioniq 5, which contains numerous statements confirming the existence and prevalence of the Charging Defects.  One headline from July 3, 2023, states the following[9]:

 

r/Ioniq5 • 14 days ago
by Filmgeek47

**Ioniq Guy was hit by the (seemingly widespread) Ioniq 5 L2 Charging Failures**

Great video from the Ioniq Guy showing what's been going on with his own car. Can't believe there hasn't been more coverage of this given the many "car of the year" awards that E-GMP cars have been earning. Prospective buyers should be warned that many of these cars can't L2 charge at advertised speeds. I'm having the same issue with mine, and I've read many many similar posts from other drivers.

54.   Among the comments under the header are the following:

---

[8] *See* reddit.com/r/ioniq5 (last visited July 24, 2023).

[9] https://www.reddit.com/r/Ioniq5/comments/14pug6p/ioniq_guy_was_hit_by_the_seemingly_widespread/ (last visited July 24, 2023).

CLASS ACTION COMPLAINT
011183-11/2316622 V1

**DustyContempt**

I just started experiencing this issue on my 2023 Limited

**drrtz**

Same. Ever since Summer temperatures arrived, I can't get more than about 30 minutes of charging at 48A before it overheats.

**redditmnb**

I've been having this issue for the past 3 months or so with my 2022 SEL. Have dropped down to the lowest charging speed and seems to have stopped for now.

**dougm0**

For those saying it's heat issue. When my car was new I was charging 40A sitting outside my garage on a 100 degree day with zero problems. 6 mo later I can't charge 40A in 20 degrees in the winter. Outside temp may have something to do with it but I assure you it's only a minor piece.

**AZDpcoffey**

Just experienced charging failure this week. Az has been 110 degrees plus this week and the garage is HOT. I had to lower my juicebox 40 to 32 amps.

**Ephrim**

Even that may not be enough. I have 32A chargers at work and will have charging failures if I charge at max current, even if it's 70 degrees outside :/

**PTVMan**

It was happening with my 2022 SEL just before I sold it. Hyundai really needs to fix this.

**TheUnseeing**

Had mine start about 6 months into owning it, dealer "can't replicate the issue" 🙄 Funny since it does it on both my chargers, and 2 others owned by friends, plus the one by my work. L3 is fine of course.

**Surffisher2A**

i am having this issue with mine as well. really disappointed with Hyundai that they won't acknowledge this problem and are

CLASS ACTION COMPLAINT

forcing a software update that slows down the charging instead
of actually fixing the issue.

### c.    Comments on Class Vehicle-specific websites and blogs

55.    There are many other websites and blogs that have long discussions of the Charging Defects in the Class Vehicles, including the following:

56.    On a Kia EV forum, a car owner posted about the issue in April 2022. There are over 700 comments, including many from Class Vehicle users experiencing the Charging Defects: https://www.kiaevforums.com/threads/charging-problem-automatically-stops-charging-at-home-the-charging-for-ev6-failed-please-check-vehicle.3659/.

57.    On a Genesis forum, many of the 700 comments on a thread about charging issues discuss the Charging Defects: https://genesisowners.com/genesis-forum/threads/reported-issues-with-the-genesis-gv60.39000/.

58.    There is another post about the Charging Defects on the same Genesis forum with over 100 comments: https://genesisowners.com/genesis-forum/threads/heads-up-charging-problem-with-chargepoint-flex-home-and-gv60-using-60a-setting.41089/page-2.

59.    Numerous other Reddit posts on the GV60 Subreddit describe the Charging Defects: https://www.reddit.com/r/GV60/search/?q=charging+&cId=e68028a9-5a90-4e4b-aaa4-aaf4a1a20b86&type=link

60.    There is an EV6 Subreddit post describing the Charging Defects: https://www.reddit.com/r/KiaEV6/comments/zdg95b/charging_failures/.

61.    A self-described "petrolheads" website discussed and linked to The Ioniq Guy's YouTube video. https://www.autoevolution.com/news/hyundai-ioniq-5-may-overheat-when-ac-charging-optional-fix-isn-t-to-everyone-s-liking-217557.html

CLASS ACTION COMPLAINT

011183-11/2316622 V1

# V.    CLASS ACTION ALLEGATIONS

## A.    Class Definitions

62.    Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the class of persons (collectively, the "Class") who purchased or leased one or more of the Class Vehicles (Hyundai Ioniq 5, Ioniq 6, Kia EV6, and Genesis GV60).

63.    Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of the following Class and Sub-Classes:

> **Nationwide Class**: All persons or entities who purchased or leased one or more of the Class Vehicles.

> **New York Sub-Class**: All persons or entities who purchased or leased one or more of the Class Vehicles in the State of New York.

> **Georgia Sub-Class**: All persons or entities who purchased or leased one or more of the Class Vehicles in the State of Georgia.

> **Florida Sub-Class:** All persons or entities who purchased or leased one or more of the Class Vehicles in the State of Florida.

64.    Excluded from the Class are the Hyundai Defendants and their officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any entity in which Defendants have a controlling interest. In addition, governmental entities and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff are excluded from the Class. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

65.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using

CLASS ACTION COMPLAINT

011183-11/2316622 V1

1  the same evidence as would be used to prove those elements in individual actions

2  alleging the same claim.

3       66.     The Class Representatives are asserting claims that are typical of claims

4  of their respective Classes, and they will fairly and adequately represent and protect

5  the interests of the Classes in that they have no interests antagonistic to those of the

6  putative Class members.

7       67.     The amount of damages suffered by each individual member of the

8  Class, in light of the expense and burden of individual litigation, would make it

9  difficult or impossible for individual Class members to redress the wrongs done to

10  them. Plaintiffs and other members of the Classes have all suffered harm and

11  damages as a result of the Hyundai Defendants' unlawful and wrongful conduct.

12  Absent a class action, the Hyundai Defendants will likely not have to compensate

13  victims for the Hyundai Defendants' wrongdoings and unlawful acts or omissions,

14  and will continue to commit the same kinds of wrongful and unlawful acts or

15  omissions in the future.

16  **B.    Class Action Requirements**

17       **1.     Numerosity under Federal Rule of Civil Procedure 23(a)(1)**

18       68.     The members of the Class are so numerous that individual joinder of all

19  of its members is impracticable. Due to the nature of the trade and commerce

20  involved, Plaintiffs believe that the total number of Class Plaintiffs is at least in the

21  tens of thousands, and are numerous and geographically dispersed across the country.

22  While the exact number and identities of the Class members are unknown at this time,

23  such information can be ascertained through appropriate investigation and discovery,

24  as well as by the notice Class members will receive by virtue of this litigation so that

25  they may self-identify. The disposition of the claims of Class members in a single

26  class action will provide substantial benefits to all Parties and the Court. Members of

27  the Class may be notified of the pendency of this action by recognized, Court-

28

CLASS ACTION COMPLAINT
011183-11/2316622 V1

approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

**2.    Commonality and Predominance under Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**

69.    This action involves common questions of law and fact which predominate over any questions affecting individual Class members, including, without limitation:

a.    Whether the Hyundai Defendants engaged in the conduct alleged herein;

b.    Whether the Hyundai Defendants knew about the Charging Defects, and if so, how long the Hyundai Defendants knew or should have known as much;

c.    Whether the Hyundai Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

d.    Whether the Hyundai Defendants omitted material facts about the quality and durability of the batteries in the Class Vehicles;

e.    Whether the Hyundai Defendants' conduct violates the CFAA, the CDAFA, the UCL, and constitutes trespass to chattel under applicable common law;

f.    Whether the Hyundai Defendants misrepresented the truth to consumers when they advertised that the Class Vehicles could be charged in seven hours at 48 amps;

g.    Whether Plaintiffs and putative class members overpaid for the Class Vehicles at the point of sale; and

CLASS ACTION COMPLAINT

h.   Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, what amount.

**3.   Typicality under Federal Rule of Civil Procedure 23(a)(3)**

70.   Plaintiffs' claims are typical of the other Class members' claims because all have been comparably injured through the Hyundai Defendants' wrongful conduct as described above.

**4.   Adequacy of Representation under Federal Rule of Civil Procedure 23(a)(3)**

71.   Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent. Additionally, Plaintiffs have retained counsel with substantial experience in handling complex class action and multi-district litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

**5.   Superiority of Class Action under Federal Rule of Civil Procedure 23(b)(3)**

72.   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The financial detriment suffered by Plaintiffs and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against the Hyundai Defendants' wrongful conduct. Even if members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device

CLASS ACTION COMPLAINT

1    presents far fewer management difficulties and provides the benefits of single

2    adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    CAUSES OF ACTION

**A.    Claims brought on behalf of the Nationwide Class, or in the alternative, on behalf of the Sub-Classes**

### COUNT I

### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030 *ET SEQ.*)

9    73.    Plaintiff Iyengar ("Plaintiff," for purposes of all claims brought on

10   behalf of the nationwide class) realleges and incorporates by reference all paragraphs

11   as though fully set forth herein.

12   74.    Plaintiff brings this count on his own behalf and on behalf of the

13   Nationwide Classes. In the alternative, Plaintiff brings this count on his own behalf

14   and on behalf of the State Sub-Classes.

15   75.    The federal Computer Fraud and Abuse Act ("CFAA") establishes a

16   private cause of action against a person who "knowingly accessed a computer without

17   authorization or exceeding authorized access," and whose prohibited access results

18   in damage or loss in excess of $5,000 in any one-year period. 18 U.S.C. § 1030(a)(4).

19   76.    The CFAA also establishes liability against whomever: "knowingly

20   causes the transmission of a program, information, code or command, and as a result

21   of such conduct, intentionally causes damage without authorization to a protected

22   computer" (§ 1030(a)(5)(A)); "intentionally accesses a protected computer without

23   authorization, and as a result of such conduct, recklessly causes damage" (§

24   1030(a)(5)(B)); or "intentionally accesses a protected computer without

25   authorization, and as a result of such conduct, causes damage and loss"

26   (§ 1030(a)(5)(C)).

27   77.    The term "computer" means "an electronic, magnetic, optical,

28   electrochemical, or other high speed data processing device performing logical,

- 39 -

011183-11/2316622 V1

arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device[.]" 18 U.S.C. § 1030(e)(1).

78.    A "protected computer" is defined, in relevant part, as a computer "which is used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B).

79.    "[E]xceeds authorized access" means "access[ing] a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled to obtain or alter." 18 U.S.C. § 1030(e)(6).

80.    "Loss" means "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

81.    Damage means "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).

82.    The term "person" means "any individual, firm, corporation, educational institution, financial institution, governmental entity, or legal or other entity." 18 U.S.C. § 1030(e)(12).  Plaintiff Iyengar is a "person" under the statute.

83.    The Class Vehicles are "computers" under the CFAA by virtue of the Class Vehicles containing Media Control Units (MCUs) which provide data processing, GPS, and communication functions, amongst others, and serve as the receiving end of the Hyundai Defendants' software updates.

84.    The Class Vehicles are also "protected computers" under the CFAA because they are used in and affect interstate and foreign commerce and communication, including through contact and communication with remote servers, personal and business usages that affect interstate and foreign commerce, and because the Class Vehicles are powered and maintained by computers which ensure

CLASS ACTION COMPLAINT
011183-11/2316622 V1

that the vehicles can operate and drive in furtherance of the stream of interstate and foreign commerce.

85.    The Hyundai Defendants perform software updates to the computers in the Class Vehicles without informing Plaintiff and the putative Class members that the updates contained code that would diminish performance and lower the charging rate of the Class Vehicles. Plaintiff and the other putative Class members did not consent to updates that would harm the performance of their charging devices, and the Hyundai Defendants was not authorized to do so, as the Hyundai Defendants failed to provide material information to Plaintiff and the putative Class members regarding the updates.

86.    The Hyundai Defendants violated 18 U.S.C. § 1030(a) by knowingly causing the transmission of vehicle software updates to Plaintiff's and the putative Class members' vehicles to access, collect, and transmit information to vehicles, which are protected computers as defined above. By transmitting information and software updates to the vehicles, the Hyundai Defendants intentionally caused damage without authorization, or at the very least, exceeded the authorized access to Plaintiff's and the other putative Class members' vehicles by impairing the ability of the vehicles and the chargers to operate as warranted, represented, and advertised by The Hyundai Defendants.

87.    The Hyundai Defendants knowingly and intentionally exceeded its authorized access to Plaintiff's and the other putative Class members' vehicles. Plaintiff and the other putative Class members did not consent to the Hyundai Defendants' manipulations with their vehicles' charging rate, nor did Plaintiff and the other putative Class members consent to the Hyundai Defendants limiting the maximum charge amps.

88.    By exceeding their authorized access, Defendants obtained and altered the information and function of the Class Vehicles, and failed to inform Plaintiff and other owners of the Class Vehicles of the reduced charging capacity and software

limited charging capabilities. Defendants did so with an intent to defraud Plaintiff and the other putative Class members and furthered the fraudulent intent to avoid its duties and legal obligations to provide Plaintiff and the putative Class members with battery replacements under warranty.

89.    Defendants' acts have also caused actual monetary loss in terms of wasted energy. The Charging Defects cost consumers energy (and therefore money) when the Class Vehicles overheat.

90.    As alleged above and herein, Defendants knowingly caused the transmission of "a program, information, code, or command . . . to a protected computer" and as a result of that conduct, intentionally caused damage to Plaintiff and the putative Class. 18 U.S.C. § 1030(a)(5)(A).

91.    Defendants' software updates caused damage and loss to Plaintiff and other putative Class members, including a significant decrease in charging speed, impairment of Plaintiff's and the other putative Class members' ability to use their own property, forcing Plaintiff and the other putative Class members to expend time, money, and labor in connection with their vehicles and to investigate and determine what the right fix would be for the Class Vehicles. Defendants caused damages and loss to Plaintiff and the putative Class members during a one-year period that exceeds $5,000 in value in the aggregate.

92.    Unless Defendants are restrained and enjoined, they will continue to commit such acts. Plaintiff's remedy at law is thus inadequate to compensate for these intentionally inflicted and threatened injuries, therefore entitling Plaintiff and the putative class to remedies including injunctive relief as provided for by § 1030(g).

93.    Therefore, Plaintiff and the putative Class members are entitled to obtain compensatory damages, injunctive relief, or other equitable relief as provided under 18 U.S.C. § 1030(g).

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT II

## VIOLATION OF THE CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT (CAL. PENAL CODE § 502, *ET SEQ.*)

94.    Plaintiff Iyengar realleges and incorporates by reference all paragraphs as though fully set forth herein.

95.    Plaintiff brings this count on his own behalf and on behalf of the Nationwide Classes. In the alternative, Plaintiff brings this count on his own behalf and on behalf of the State Sub-classes.

96.    The California Computer Data Access and Fraud Act, California Penal Code § 502 ("CDAFA"), regulates "tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems."

97.    Pursuant to Cal. Penal Code § 502(b):

      a.    "Access" means to gain entry to, instruct, or communicate with the logical, arithmetical, or memory function resources of a computer, computer system, or computer network.

      b.    "Computer network" means any system that provides communications between one or more computer systems and input/output devices including, but not limited to, display terminals and printers connected by telecommunication facilities.

      c.    "Computer program or software" means a set of instructions or statements, and related data that, when executed in actual or modified form, cause a computer, computer system, or computer network to perform specified functions.

      d.    "Computer services" includes, but is not limited to, computer time, data processing, or storage functions, or

- 43 -

011183-11/2316622 V1

1    other uses of a computer, computer system, or computer

2    network.

3    98.    Cal. Penal Code § 502 provides: "For purposes of bringing a civil or a

4  criminal action under this section, a person who causes, by any means, the access of

5  a computer, computer system, or computer network in one jurisdiction from another

6  jurisdiction is deemed to have personally accessed the computer, computer system,

7  or computer network in each jurisdiction."

8    99.    Cal. Penal Code § 502(e) provides a civil cause of action for

9  compensatory damages, injunctive relief, or other equitable relief, to "the owner or

10  lessee of the computer, computer system, computer network, computer program, or

11  data who suffers damage or loss by reason of a violation" of the CDAFA.

12    100.    The Class Vehicles are part of a "computer system" and provide

13  "computer services" because the Class Vehicles contain Media Control Units

14  (MCUs), which provide data processing, GPS, the ability to send and receive

15  communications, and other functions, and serve as the receiving end of Defendants'

16  software updates.

17    101.    A violation of section 502(c)(3) occurs when any person "[k]nowingly

18  and without permission uses or causes to be used computer services."

19    102.    A violation of section 502(c)(4) occurs when any person "[k]nowingly

20  accesses and without permission adds, alters, damages, deletes, or destroys any data,

21  computer software, or computer programs which reside or exist internal or external

22  to a computer, computer system, or computer network."

23    103.    A violation of section 502(c)(7) also occurs when any person

24  "[k]nowingly and without permission accesses or causes to be accessed any

25  computer, computer system, or computer network."

26    104.    Defendants have violated California Penal Code § 502 by knowingly

27  accessing, copying, using, making use of, interfering, and/or altering data belonging

28  to Plaintiff: (1) in and from the State of California; (2) in the home states of the

1   Plaintiff; and (3) in the state in which the servers that provided the communication

2   link between Plaintiff and the websites they interacted with were located.

3       105.   Defendants have violated California Penal Code § 502 by knowingly

4   and intentionally causing the transmission of vehicle software updates to Plaintiff's

5   Class Vehicles, thereby intentionally causing damage without authorization, or, at

6   the very least, exceeding Defendants' authorization to access the Class Vehicles.

7       106.   Defendants perform software updates to the computers in the Class

8   Vehicles without informing Plaintiff and the putative Class members that the updates

9   contained code that would diminish performance and lower the charging rate of the

10  Class Vehicles. Plaintiff and the other putative Class members did not consent to

11  updates that would harm the performance of their charging devices, and Defendants

12  were not authorized to do so, as they failed to provide material information to

13  Plaintiff and the putative Class members regarding the updates.

14      107.   Defendants knowingly and intentionally exceeded its authorized access

15  to the Class Vehicles. Plaintiff and other putative Class members did not consent to

16  Defendants' manipulation of the software controlling the batteries and charging

17  speed of the Class Vehicles, nor did Plaintiff consent to Defendants lowering the

18  batteries' performance capacity.

19      108.   By exceeding its authorized access, Defendants obtained and altered the

20  information and function of the Class Vehicles, and failed to inform Plaintiff and

21  other owners of the Class Vehicles of the reduced charging capacity and software

22  limited charging capabilities. Defendants did so with an intent to defraud Plaintiff

23  and the other putative Class members and furthered the fraudulent intent to avoid its

24  duties and legal obligations to provide Plaintiff and the putative Class members with

25  battery replacements under warranty.

26      109.   Defendants' software updates caused damage and loss to Plaintiff and

27  other putative Class members, including a decrease to the charging rate, damage to

28  the components, and wasted energy.   The Hyundai Defendants have impaired

Plaintiff's and the other class members' ability to use their own property, forcing Plaintiff and other putative Class members to expend time, money, and labor in connection with their vehicles and to investigate and determine what the right fix would be for the Class Vehicles.

110.   As a direct and proximate result of Defendant's unlawful conduct within the meaning of California Penal Code § 502, Defendants have caused loss to Plaintiff in an amount to be proven at trial, including (a) decrease in the value of the vehicle; (b) damage to the components of the vehicle; and (c) excess funds spent on wasted energy. Pursuant to Cal. Penal Code § 502(e)(1), Plaintiff seeks injunctive relief and compensatory damages. Plaintiff is also entitled to recover his reasonable attorneys' fees pursuant to California Penal Code § 502(e)(2).

111.   Plaintiff and Class members are entitled to punitive or exemplary damages pursuant to Cal. Penal Code § 502(e)(4) because Defendants' violations were willful and, upon information and belief, Defendants are guilty of oppression, fraud, or malice as defined in Cal. Civil Code § 3294(c).

## COUNT III

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)

112.   Plaintiff Iyengar incorporate by reference all paragraphs as though fully set forth herein.

113.   Plaintiff brings this count on his own behalf and on behalf of the Nationwide Classes. In the alternative, Plaintiff brings this count on his own behalf and on behalf of the State Sub-Classes.

114.   California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

011183-11/2316622 V1

115.   Defendants have engaged in unlawful conduct in violation of the CFAA, the CDAFA, and trespass to chattels under California common law by knowingly and intentionally causing the transmission of vehicle software updates to Plaintiff's Class Vehicles, thereby intentionally causing damage without authorization, or, at the very least, exceeding Defendants' authorization to access the Class Vehicles.

116.   Defendants knowingly and intentionally exceeded its authorized access to the Class Vehicles. Plaintiff and other putative Class members did not consent to Defendants' manipulation of the software controlling the batteries in the Class Vehicles, including consenting to updates that would harm the charging rates and performance of their vehicles.

117.   Defendants' software updates caused damage and loss to Plaintiff and other putative Class members, including a significant increase in charging time, impairment of Plaintiff's and the other class members' ability to use their own property, forcing Plaintiff and other putative Class members to expend time, money, and labor in connection with their vehicles and to investigate and determine what the right fix would be for the Class Vehicles.

118.   Plaintiff and the putative Class members seek to enjoin Defendants' unlawful and unfair acts pursuant to Cal. Bus. & Prof. Code § 17200 *et seq.*

119.   Plaintiff and the putative Class also seek attorneys' fees and any other just and proper relief available.

## COUNT IV

## TRESPASS TO CHATTEL

120.   Plaintiff Iyengar incorporates by reference all paragraphs as though fully set forth herein.

121.   Plaintiff brings this count on his own behalf and on behalf of the Nationwide Classes. In the alternative, Plaintiff brings this count on his own behalf and on behalf of the State Sub-Classes.

CLASS ACTION COMPLAINT

122.   It is a violation of California's common law prohibition of trespass to chattels if a "(1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage."[10] "Damage" includes when the trespass impaired the condition, quality, usefulness, or value of the personal property.

123.   Defendants impaired the condition, quality, usefulness, and value of the Class Vehicles, without Plaintiff's or Class members' knowledge or consent. These acts constitute an intentional interference with the use and enjoyment of the vehicles.

124.   Defendants acted intentionally because it deliberately pushed out software updates for the Class Vehicles that increased the charging time for the vehicles. At no point did Plaintiff and putative Class members agree to software updates that would diminish the charging performance of their vehicles and the batteries.

125.   Defendants engaged in deception in order to gain access to the vehicles and install new computer software updates. Through their own pre-update testing, Defendants must have known about the harmful effects of the software update on the Class Vehicles, including their battery charging time.  Defendants deliberately held this information from the TSB on the software update. Nor did Defendants advise customers of the harmful effects of the software updates.

126.   Plaintiff and putative Class members suffered actual damages as a result of Defendants' actions in an amount to be determined at trial.

127.   Plaintiff and the Class also seek punitive damages because Defendant engaged in aggravated and outrageous conduct with an evil mind. Indeed, Defendant carried out despicable conduct with willful and conscious disregard of the rights of others. Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

---

[10] *In re Apple Inc. Device Perf. Litig.*, 347 F. Supp. 3d 434, 455 (N.D. Cal. 2018).

CLASS ACTION COMPLAINT

**B.    Claims Brought on Behalf of the New York Class.**

### COUNT I

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (N.Y. GEN. BUS. LAW § 349)

128.   Plaintiff David Gould (for purposes of all New York Class Counts) incorporate by reference all paragraphs as though fully set forth herein.

129.   Plaintiff brings this Count on behalf of the New York Class members.

130.   Plaintiff is a "person" within the meaning of New York General Business Law ("New York GBL"). N.Y. Gen. Bus. Law § 349(h).

131.   The Hyundai Defendants are a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

132.   New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Defendants' conduct, as described in this Complaint, constitutes "deceptive acts or practices" within the meaning of the New York GBL. All of Defendants' deceptive acts and practices, which were intended to mislead consumers in a material way in the process of purchasing or leasing Class Vehicles, constitute conduct directed at consumers and "consumer-oriented." Further, Plaintiffs and other Class members suffered injury as a result of the deceptive acts or practice.

133.   Defendants' actions, as set forth above, occurred in the conduct of business, trade or commerce.

134.   In the course of Defendants' business, Defendants willfully failed to disclose and systematically and actively concealed the Charging Defects. Particularly in light of Defendants' national advertising campaign, a reasonable American consumer would expect the Class Vehicles to fully charge within seven hours, and would further expect that they would not need to monitor the charging to unplug and replug the charger when it overheated. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud,

- 49 -
011183-11/2316622 V1

1    misrepresentations, or concealment, suppression, or omission of any material fact

2    with intent that others rely upon such concealment, suppression, or omission, in

3    connection with the sale of the Class Vehicles.

4        135.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other

5    Class members were deceived by Defendants' failure to disclose the Charging

6    Defects and by Defendants' affirmative misrepresentations about the charging time.

7    Plaintiffs and Class members reasonably relied upon Defendants' false

8    misrepresentations, and had no way of knowing that Defendants' representations

9    were false and gravely misleading. As alleged herein, Defendants engaged in

10   extremely sophisticated methods of deception.

11       136.   Defendants' unfair or deceptive acts or practices, fraud,

12   misrepresentations, suppression and omission of material facts were likely to and did

13   in fact deceive reasonable consumers.

14       137.   Defendants intentionally and knowingly misrepresented material facts

15   regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

16       138.   Defendants knew or should have known that its conduct violated the

17   New York GBL.

18       139.   Defendants owed Plaintiffs and the Class a duty to disclose the truth

19   about the Charging Defects because Defendants:

20           a.    Possessed exclusive knowledge of the design of the Class

21               Vehicles and how the charging system worked in the

22               Vehicles;

23           b.    Intentionally concealed the foregoing from Plaintiffs and

24               the Class; and/or

25           c.    Made incomplete representations regarding the charging

26               time and charging capability of the Class Vehicles.

27       140.   Due to Defendants' specific and superior knowledge of the Charging

28   Defects, their false representations regarding the increased durability of the Class

- 50 -

011183-11/2316622 V1

Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, Defendants had a duty to disclose the existence of the Charging Defects, and the limitations of the charging system, to Plaintiffs and other Class members. Having volunteered to provide information to Plaintiffs and Class members, Defendants had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Charging time (and having the charge be uninterrupted by overheating and shutdowns) are material concerns to consumers. Defendants represented to Plaintiffs and other Class members that they would be able to charge in seven hours with a Level 2 charger, when in fact it will take much longer due to the Charging Defects.

141.    Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. They also incurred additional energy costs due to the overheating.  These injuries are the direct and natural consequence of Defendants' misrepresentations, fraud, deceptive practices, and omissions.

142.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful and deceptive acts and practices complained of herein impact the public interest. Specifically: (1) the number of consumers affected by Defendants' deceptive practices are in the tens of thousands nation-wide; (2) Defendants has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class members; and (3) so long as the Class Vehicles continue to be sold with the Charging Defects, the likelihood of continued impact on other consumers is significant.

CLASS ACTION COMPLAINT
011183-11/2316622 V1

143.   Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiffs and each Class member seek actual damages or $50, whichever is greater, in addition to discretionary three times actual damages up to $1,000 for Defendant's willful and knowing violation of N.Y. Gen. Bus. Law § 349. Plaintiffs and New York Class members also seek attorneys' fees, an order enjoining Defendants' deceptive conduct, and any other just and proper relief available under the New York GBL.

## COUNT II

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (N.Y. GEN. BUS. LAW § 350)

144.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

145.   Plaintiff brings this Count on behalf of the New York Class members.

146.   New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity." N.Y. Gen. Bus. Law § 350-a.

147.   Defendants caused to be made or disseminated throughout New York, through advertising, marketing, and other publications, representations that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

148.   Defendants have violated N.Y. Gen. Bus. Law § 350 because of the misrepresentations and omissions alleged herein, including, but not limited to, Defendants' failure to disclose the Defect 1 and the failure to disclose Defect 2 – that a subsequent update would dramatically increase the charging time of the vehicles.

149.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose the Charging Defects and by Defendants' affirmative misrepresentations about the charging time. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations, and had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception.

150.   Defendants' unfair or deceptive acts or practices, fraud, misrepresentations, suppression and omission of material facts were likely to and did in fact deceive reasonable consumers.

151.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

152.   Defendants knew or should have known that its conduct violated the New York GBL.

153.   Defendants owed Plaintiffs and the Class a duty to disclose the truth about the Charging Defects because Defendants:

        a.   Possessed exclusive knowledge of the design of the Class Vehicles and how the charging system worked in the Vehicles;

        b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

        c.   Made incomplete representations regarding the charging time and charging capability of the Class Vehicles.

154.   Due to Defendants' specific and superior knowledge of the Charging Defects, their false representations regarding the increased durability of the Class Vehicles, and Plaintiffs' and other Class members' reliance on these material representations, Defendants had a duty to disclose the existence of the Charging Defects, and the limitations of the charging system, to Plaintiffs and other Class

members. Having volunteered to provide information to Plaintiffs and Class members, Defendants had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Charging time (and having the charge be uninterrupted by overheating and shutdowns) are material concerns to consumers. Defendants represented to Plaintiffs and other Class members that they would be able to charge in seven hours with a Level 2 charger, when in fact it will take much longer due to the Charging Defects.

155.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. They also incurred additional energy costs due to the overheating.  These injuries are the direct and natural consequence of Defendants' misrepresentations, fraud, deceptive practices, and omissions.

156.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful and deceptive acts and practices complained of herein impact the public interest. Specifically: (1) the number of consumers affected by Defendants' deceptive practices are in the tens of thousands nation-wide; (2) Defendants has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class members; and (3) so long as the Class Vehicles continue to be sold with the Charging Defects, the likelihood of continued impact on other consumers is significant.

157.   Plaintiffs and the other Class members are entitled to recover their actual damages or $500, whichever is greater. Because Defendants acted willfully or knowingly, Plaintiffs and the other Class members are entitled to recover three times actual damages, up to $10,000.

**COUNT III**

**UNJUST ENRICHMENT**

158.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

159.   Plaintiff brings this Count on behalf of the New York Class members.

160.   This claim is pleaded in the alternative to any contract-based claims brought on behalf of Plaintiff.

161.   Defendants have received and retained a benefit from Plaintiff, and inequity has resulted.

162.   Defendants have benefitted from selling and leasing the Class Vehicles for more than they were worth as a result of Defendants' conduct, at a profit, and Plaintiff has overpaid for the Class Vehicles and been forced to pay other costs.

163.   Thus, Plaintiffs conferred a benefit on Defendants.

164.   It is against equity and good conscience for Defendants to retain these benefits.

165.   Plaintiff was not aware of the true facts about his Class Vehicle, and did not benefit from Defendants' conduct.

166.   Defendants knowingly accepted the benefits of its unjust conduct.

167.   As a result of Defendants' conduct, the amount of its unjust enrichment should be determined to be an amount according to proof.

**C.    Claims Brought on Behalf of the Georgia Class.**

**COUNT I**

**VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT**
**(GA. CODE ANN. § 10-1-390 *ET SEQ.*)**

168.   Plaintiff Kaushik Iyengar (for purposes of all Georgia Counts) hereby incorporates all paragraphs as though set forth herein.

169.   The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and

- 55 -

011183-11/2316622 V1

consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. § 10-1-393(a), including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised." Ga. Code. Ann. § 10-1-393(b).

170.   Plaintiff and Georgia Class members are "consumers" within the meaning of Ga. Code Ann. § 10-1-393(b).

171.   At all relevant times, Defendants have engaged in "trade or commerce" within the meaning of Ga. Code Ann. § 10-1-393(b).

172.   Defendants have participated in unfair and deceptive trade practices that violated the Georgia FBPA as described herein. In the course of Defendants' business, Defendants willfully failed to disclose and systematically and actively concealed the Charging Defects. Particularly in light of Defendants' national advertising campaign, a reasonable American consumer would expect the Class Vehicles to fully charge within seven hours, and would further expect that they would not need to monitor the charging to unplug and replug the charger when it overheated. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

173.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose the Charging Defects and by Defendants' affirmative misrepresentations about the charging time. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations, and had no way of knowing that Defendants' representations

- 56 -
CLASS ACTION COMPLAINT

were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception.

174. Defendants' unfair or deceptive acts or practices, fraud, misrepresentations, suppression and omission of material facts were likely to and did in fact deceive reasonable consumers.

175. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

176. Defendants knew or should have known that its conduct violated the Georgia FBPA.

177. Defendants owed Plaintiffs and the Class a duty to disclose the truth about the Charging Defects because Defendants:

    a.    Possessed exclusive knowledge of the design of the Class Vehicles and how the charging system worked in the Vehicles;

    b.    Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

    c.    Made incomplete representations regarding the charging time and charging capability of the Class Vehicles.

178. Due to Defendants' specific and superior knowledge of the Charging Defects, their false representations regarding the Class Vehicles' charging systems, and Plaintiffs' and other Class members' reliance on these material representations, Defendants had a duty to disclose the existence of the Charging Defects, and the limitations of the charging system, to Plaintiffs and other Class members. Having volunteered to provide information to Plaintiffs and Class members, Defendants had a duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Charging time (and having the charge be uninterrupted by overheating and shutdowns) are material

011183-11/2316622 V1

concerns to consumers. Defendants represented to Plaintiffs and other Class members that they would be able to charge in seven hours with a Level 2 charger, when in fact it will take much longer due to the Charging Defects.

179.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. They also incurred additional energy costs due to the overheating.  These injuries are the direct and natural consequence of Defendants' misrepresentations, fraud, deceptive practices, and omissions.

180.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful and deceptive acts and practices complained of herein impact the public interest. Specifically: (1) the number of consumers affected by Defendants' deceptive practices are in the tens of thousands nation-wide; (2) Defendants has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiffs and individual Class members; and (3) so long as the Class Vehicles continue to be sold with the Charging Defects, the likelihood of continued impact on other consumers is significant.

181.   On July 25, 2023, Plaintiff's counsel, on behalf of Plaintiff, sent a letter to Defendants with notice of its allegations regarding Defendants' violations of the Georgia FBPA relating to the Class Vehicles and the Georgia Class Members' demand that Defendants correct or agree to correct the actions described therein, in accordance with Ga. Code Ann. § 10-1-399(b). If Defendants have failed to do so within the statutory prescribed time period, Plaintiffs, through counsel, will amend the complaint to allege compensatory and monetary damages to which Plaintiff and Georgia Class Members are entitled.

**COUNT II**

**VIOLATION OF THE GEORGIA UNIFORM
DECEPTIVE TRADE PRACTICES ACT
(GA. CODE ANN. § 10-1-370 *ET SEQ.*)**

182.    Plaintiff hereby incorporates all paragraphs as though fully set forth herein.

183.    This claim is brought on behalf of the Georgia Class members.

184.    Georgia's Uniform Deceptive Trade Practices Act (Georgia UDTPA) prohibits "deceptive trade practices," which include "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another"; and "[a]dvertising goods or services with intent not to sell them as advertised." Ga. Code Ann. § 10-1-393(b).

185.    Defendants, Plaintiff, and Georgia Class members are "persons" within the meaning of Ga. Code Ann. § 10-1-371(5).

186.    Plaintiffs seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under Ga. Code Ann. § 10-1-373.

**COUNT III**

**UNJUST ENRICHMENT**

187.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

188.    Plaintiff brings this Count on behalf of the Georgia Class members.

189.    This claim is pleaded in the alternative to any contract-based claims brought on behalf of Plaintiffs.

190.    Defendants have received and retained a benefit from Plaintiff and inequity has resulted.

- 59 -

011183-11/2316622 V1

191.    Defendants have benefitted from selling and leasing the Class Vehicles for more than they are worth as a result of Defendants' conduct, at a profit, and Plaintiff has overpaid for the Class Vehicles and been forced to pay other costs.

192.    Thus, all Plaintiffs conferred a benefit on Defendants.

193.    It is inequitable for Defendants to retain these benefits.

194.    Plaintiff was not aware of the true facts about the Class Vehicles and did not benefit from Defendants' conduct.

195.    Defendants knowingly accepted the benefits of their unjust enrichment.

196.    As a result of Defendants' conduct, the amount of its unjust enrichment should be determined in an amount according to proof.

**D.    Claims Brought on Behalf of the Florida Class.**

**COUNT I**

**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA"),**
**(FLA. STAT. ANN. § 501.201, *ET SEQ.*)**

197.    Plaintiff John Nixon incorporates all Paragraphs as though fully set forth herein.

198.    Plaintiff and other Class Members who purchased their vehicles new are "consumers" within the meaning of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.203(7)*.*

199.    Defendants engaged in "trade or commerce" within the meaning of Fla. Stat. Ann. § 501.203(8).

200.    The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.204(1).

201.    In the course of Defendants' business, Defendants willfully failed to disclose and systematically and actively concealed the Charging Defects. Particularly in light of Defendants' national advertising campaign, a reasonable American

- 60 -

**CLASS ACTION COMPLAINT**

consumer would expect the Class Vehicles to fully charge within seven hours, and would further expect that they would not need to monitor the charging to unplug and replug the charger when it overheated. Accordingly, Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

202.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Defendants' failure to disclose the Charging Defects and by Defendants' affirmative misrepresentations about the charging time. Plaintiffs and Class members reasonably relied upon Defendants' false misrepresentations, and had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Defendants engaged in extremely sophisticated methods of deception.

203.  Defendants' unfair or deceptive acts or practices, fraud, misrepresentations, suppression and omission of material facts were likely to and did in fact deceive reasonable consumers.

204.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the Class.

205.   Defendants knew or should have known that its conduct violated the FDUTPA.

206.   Defendants owed Plaintiffs and the Class a duty to disclose the truth about the Charging Defects because Defendants:

        a.   Possessed exclusive knowledge of the design of the Class Vehicles and how the charging system worked in the Vehicles;

        b.   Intentionally concealed the foregoing from Plaintiffs and the Class; and/or

- 61 -

011183-11/2316622 V1

1

2

      c.    Made incomplete representations regarding the charging time and charging capability of the Class Vehicles.

3      207.  Due to Defendants' specific and superior knowledge of the Charging

4  Defects, their false representations regarding the increased durability of the Class

5  Vehicles, and Plaintiffs' and other Class members' reliance on these material

6  representations, Defendants had a duty to disclose the existence of the Charging

7  Defects, and the limitations of the charging system, to Plaintiffs and other Class

8  members. Having volunteered to provide information to Plaintiffs and Class

9  members, Defendants had a duty to disclose not just the partial truth, but the entire

10  truth. These omitted and concealed facts were material because they directly impact

11  the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.

12  Charging time (and having the charge be uninterrupted by overheating and

13  shutdowns) are material concerns to consumers. Defendants represented to Plaintiffs

14  and other Class members that they would be able to charge in seven hours with a

15  Level 2 charger, when in fact it will take much longer due to the Charging Defects.

16      208.  Plaintiffs and the other Class members were injured and suffered

17  ascertainable loss, injury in fact, and/or actual damage as a proximate result of

18  Defendants' conduct in that Plaintiffs and the other Class members overpaid for their

19  Class Vehicles and did not receive the benefit of their bargain, and their Class

20  Vehicles have suffered a diminution in value. They also incurred additional energy

21  costs due to the overheating.  These injuries are the direct and natural consequence

22  of Defendants' misrepresentations, fraud, deceptive practices, and omissions.

23  Defendant's violations present a continuing risk to Plaintiffs as well as to the general

24  public. Defendant's unlawful acts and practices complained of herein affect the

25  public interest.  Specifically: (1) the number of consumers affected by Defendants'

26  deceptive practices are in the tens of thousands nation-wide; (2) Defendants has

27  significantly high sophistication and bargaining power with respect to the

28  manufacture and sale of the Class Vehicles to Plaintiffs and individual Class

011183-11/2316622 V1

members; and (3) so long as the Class Vehicles continue to be sold with the Charging Defects, the likelihood of continued impact on other consumers is significant.

209.   Accordingly, Defendants are liable to Plaintiffs and the other Class Members for damages in an amount to be proven at trial.

**COUNT II**

**UNJUST ENRICHMENT**

210.   Plaintiff incorporates all paragraphs as though fully set forth herein.

211.   Plaintiffs bring this Count individually and on behalf of the Class against Defendants.

212.   This claim is pleaded in the alternative to any contract-based claims brought on behalf of Plaintiff.

213.   Defendants have received and retained a benefit from Plaintiff, and inequity has resulted.

214.   Defendants have benefitted from selling and leasing the Class Vehicles for more than they were worth as a result of Defendants' conduct, at a profit, and Plaintiff has overpaid for the Class Vehicles and been forced to pay other costs.

215.   Thus, Plaintiffs conferred a benefit on Defendants.

216.   It is against equity and good conscience for Defendants to retain these benefits.

217.   Plaintiff was not aware of the true facts about his Class Vehicle, and did not benefit from Defendants' conduct.

218.   Defendants knowingly accepted the benefits of its unjust conduct.

219.   As a result of Defendants' conduct, the amount of its unjust enrichment should be determined to be an amount according to proof.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of members of the putative Class, respectfully request that this Court enter judgment in their favor and against the Hyundai Defendants as follows:

011183-11/2316622 V1

A. Certification of the proposed Class and Sub-Classes, including appointment of Plaintiffs' counsel as Class Counsel;

B. An order temporarily and permanently enjoining Defendants from continuing unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C. Injunctive relief in the form of an adequate recall, free replacement, or vehicle buy-back program;

D. An order establishing Defendants as a constructive trustee over profits wrongfully obtained, plus interest;

E. Costs, restitution, damages, including punitive damages, exemplary damages and treble damages, and disgorgement in an amount to be determined at trial;

F. An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

G. An award of costs and attorney's fees; and

H. Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

DATED: July 26, 2023                    **HAGENS BERMAN SOBOL SHAPIRO LLP**

By */s/ Christopher R. Pitoun*
  Christopher R. Pitoun (SBN 290235)
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
christopherp@hbsslaw.com

- 64 -

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Steve W. Berman (*pro hac vice* forthcoming)
Jerrod C. Patterson (*pro hac vice* forthcoming)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
jerrodp@hbsslaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

- 65 -
CLASS ACTION COMPLAINT

011183-11/2316622 V1